65457. JEFFERSON-PILOT FIRE & CASUALTY COMPANY v. COMBS et al.

BIRDSONG, Judge.

Motion to Dismiss—Stacking of Uninsured Motorist Coverages. Following a jury trial and verdict in favor of the appellees, Combs and the Dollars, the trial court entered judgment on the verdict on March 29, 1982. The appellant insurance company filed its notice of appeal on June 15, 1982. However, previous thereto, on June 4, 1982, Jefferson-Pilot moved the trial court to set aside the judgment on the ground that through a clerical mistake of the clerk of court the insurance company was not notified by the clerk of court of the entry of judgment on March 29, 1982. On June 10, 1982, the trial court while refusing to set aside the judgment, found the clerk had not informed counsel of the entry of judgment and granted Jefferson-Pilot the right to file an out-of-time review. Within the time allocated by the order of the trial court, Jefferson-Pilot perfected its appeal. The appellees have moved this court to dismiss the appeal as having been improvidently filed. *Held:*

It is clear that in its order of June 10, 1982 the trial court intended to exercise its power to grant appellant Jefferson-Pilot an appropriate time in which to file a notice of appeal. This power is

manifest in *Cambron v. Canal Ins. Co.,* 246 Ga. 147, 148 (269 SE2d 426). Though the trial court expressly declined to follow the procedure set forth in *Cambron,* supra, we will accept the notice of appeal as having been filed within 30 days of the trial court's recognition of the clerical error that impeded an earlier and timely filing after the original entry of judgment. The motion to dismiss the appeal accordingly is denied.

Proceeding to the merits of the appeal, the facts reflect that John Dollar was a resident of his father's household. As such it is not disputed that he was covered under the uninsured motorist provisions of his father's (Billy Dollar's) insurance policy carried by the appellant Jefferson-Pilot. Additionally John Dollar questionably was insured in his own right by Atlanta Casualty Co. This question arose because John Dollar had been informed by Atlanta Casualty that the insurance would expire on August 11, 1980, unless a $673 renewal premium was paid. On August 25, 1980, John Dollar mailed $200 to Atlanta Casualty. The insurance company accepted the check and deposited it without comment. On August 30, 1980, John Dollar was killed in an automobile operated by Randy Combs. It was established that Combs carried no insurance, that Combs was the driver, and the car was owned by Combs. Billy and Mary Dollar brought suit against Atlanta Casualty seeking recovery under their son John's policy with Atlanta Casualty. Jefferson-Pilot was not made a party to that suit. Atlanta Casualty compromised the claim by paying $1,500 PIP (funeral costs) and $3,000 for further and final settlement.

The Dollars then sought the uninsured motorist coverage for their deceased son against Jefferson-Pilot under Billy Dollar's policy. That policy provided the minimum $10,000 uninsured motorist coverage. The jury returned a verdict against Jefferson-Pilot for the full $10,000. Jefferson-Pilot sought a reduction in the amount of the judgment it must pay under the terms of its policy contending that its policy required it to pay only a pro-rata share of uninsured motorist coverage along with any other liable insurers. Because Atlanta Casualty had paid the Dollars $3,000 of its half (there being two insurers granting the same coverage), then Jefferson-Pilot argued it should be liable for only half of the $10,000 verdict, or $5,000. The argument continued that even if the trial court felt the Dollars were entitled to $10,000 and not necessarily half and half from each liable insurer, Jefferson-Pilot was entitled to a credit for the $3,000 previously paid by Atlanta Casualty thus reducing its liability to $7,000 of the verdict of $10,000. The Dollars contend on the other hand that Atlanta Casualty admitted, if it were liable at all, that the policy extended to liability, PIP and uninsured motorist coverage.

Though there was no dispute that the $1,500 funeral costs were PIP, the Dollars argue that the $3,000 could be either for liability or uninsured coverage or partially as to both. Because the compromise payment was not specified as being prorated to any parts of the questioned policy, their argument continues that the $3,000 payment should have no effect on Jefferson-Pilot's obligation to satisfy the full $10,000 verdict.

We must reject the argument advanced by the Dollars. Whatever reasoning might have been utilized by the Dollars and Atlanta Casualty at the time of the settlement, the facts established at the trial of this case prove that Combs was uninsured; John Dollar suffered no economic losses other than funeral expenses; and, that John Dollar was not liable to any person for property damage or personal injury other than the loss of his own life. Moreover, it is obvious that the Dollars were not seeking reimbursement nor coverage for liability payments charged against their deceased son inasmuch as there was no such liability but were seeking uninsured motorist coverage for their son's wrongful death.

OCGA § 33-7-11 (Code Ann. § 56-407.1) requires a minimum coverage for an uninsured motorist of $10,000. In the absence of evidence to the contrary, such minimum coverage must be presumed as to both Jefferson-Pilot and Atlanta Casualty. Uninsured motorist coverage held by John Dollar followed him as a passenger into an uninsured car. That insurance would "stack" until the amount of damage (the $10,000 verdict) was paid, assuming coverages, on a per policy basis, were not sooner exhausted. *State Farm Mut. Auto. Ins. Co. v. Harper,* 125 Ga. App. 696, 698 (188 SE2d 813). The *Harper* case, supra, also unequivocally holds that an insured under two separate uninsured motorist policies, may recover on both policies but not to exceed his actual damages pursuant to the uninsured motorist statute. See *Travelers Indem. Co. v. Williams,* 119 Ga. App. 414, 416 (167 SE2d 174).

Though Atlanta Casualty did not specify for what reason it paid the Dollars $3,000, the only logical deduction and plausible conclusion was that Atlanta Casualty paid the $3,000 as a compromise and settlement of its potential liability for uninsured motorist coverage. See *Wilson v. Auto-Owners, Ins. Co.,* 159 Ga. App. 315, 316 (283 SE2d 308). Thus it is clear that though the Dollars could pursue coverage on each policy issued by Atlanta Casualty and Jefferson-Pilot, their recovery could not exceed the limit of damages, in this case the sum of $10,000 set by the jury's verdict.

However, we are not persuaded by the argument that by settling a potentially larger recovery, with Atlanta Casualty that the Dollars are now limited to a maximum recovery of $8,000, $5,000 by

Jefferson-Pilot's half and $3,000 as the compromised sum of Atlanta Casualty's half. If litigation had established that Atlanta Casualty had not been liable at all, Jefferson-Pilot would have been liable for the full amount of its coverage, i. e., $10,000. The Dollars are entitled to the amount of their damages. *Travelers Indem. v. Williams,* supra. Thus, we conclude that the trial court erred in not crediting Jefferson-Pilot with the $3,000 previously paid by Atlanta Casualty. Accordingly, we will affirm the judgment provided, upon remittitur, the appellees accept and the trial court credits Jefferson-Pilot with the $3,000 previously paid against the $10,000 judgment; otherwise the judgment is reversed.

*Judgment affirmed with direction; otherwise reversed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED APRIL 13, 1983.

*Ward D. Hull,* for appellant.
*Tyron C. Elliott,* for appellees.